UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AMANDA CHASE ) | CIVIL ACTION |
|     Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| ) | JURY TRIAL CLAIMED |
| ASSOCIATED CREDITORS EXCHANGE, INC. ) | |
|     Defendant ) | |
| ) | MAY 23, 2012 |

## COMPLAINT

1. This is a suit brought by a consumer for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and includes pendent State claims for violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110g *et seq.,* and for intentional infliction of emotional distress.

2. Plaintiff, Amanda Chase, is a natural person residing in Enfield, Connecticut and is a "consumer" within the meaning of 15 U.S.C. 1692a(3).

3. Defendant, Associated Creditors Exchange, Inc. ("ACE"), is an Arizona Corporation that operates call centers and engages in collection activities and is a "debt collector" as defined by 15 U.S.C 1692a(6).

4. Jurisdiction in this Court is proper pursuant to 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331 and 1337; supplemental jurisdiction is proper pursuant to 28 U.S.C § 1367.

5. This Court has jurisdiction over ACE because it engages in business activities within Connecticut.

6. Venue in this Court is proper, as the Plaintiff is a resident of Connecticut and the acts complained of occurred in this state.

7. Prior to January 2011, Plaintiff incurred a balance on an HSBC Best Buy Credit Card ("the Debt").

8. Following a period of financial hardship, Plaintiff entered a debt management program, where the debt management program agreed to make the monthly minimum payment on the Debt as well as 4 other credit card accounts on Plaintiff's behalf.

9. Unknown to Plaintiff, the debt management program paid the Debt 2-3 days late each month for a period of six months, causing the account to incur late charges, and causing the minimum payments to be insufficient.

10. When Plaintiff discovered the error, she requested that HSBC change her payment due date, but HSBC refused.

11. By this point, Plaintiff's monthly minimum payment exceeded $300, and she could no longer afford to make the minimum payment.

12. On or around late 2011 or early 2012, Plaintiff began to receive collection calls from Associated Creditors Exchange in reference to the Debt.

13. During these calls, Plaintiff was told various outstanding balances of the debt, and was unable to obtain a definitive balance.  Further, Plaintiff was not informed of her right to dispute the validity of the debt, nor of her right to obtain the name and address of the original creditor.

14. During several of these calls on or around late 2011 or early 2012, Plaintiff requested that ACE provide her with verification of the debt, but she did not receive a response to her requests.

15. Despite that it had failed to provide Plaintiff with verification of the debt, on or around mid January 2012, ACE sent Plaintiff a settlement notification that stated that ACE was authorized to accept 50% of the debt as settlement.  On or around February 23, 2012 Plaintiff spoke with an ACE representative named Jason Aguilera ("Aguilera"). During that conversation, Aguilera attempted to collect the Debt.

16. Plaintiff advised Aguilera that, despite several requests, she had not received verification of the debt, and that she did not feel comfortable making a payment before receiving verification.

17. To this, Aguilera responded angrily; he yelled at Plaintiff, accused her of refusing to pay the Debt, told her that her credit would be ruined, threatened to move her account to a "refusal to pay" status, and threatened to garnish her wages.

18. Plaintiff responded that she had not refused to pay and was merely requesting verification of the Debt.

19. To this, Aguilera responded that ACE would sue Plaintiff if she did not pay that day or set up a payment arrangement.

20. Plaintiff was reduced to tears by Aguilera's conduct.

21. Following its February 23, 2012 call to Plaintiff, ACE began contacting Plaintiff's family members, including Plaintiff's Mother, Father, Brother and Sister-in-law, and Brother-in-law and Sister-in-law.

22. At the time that it contacted Plaintiff's family members, ACE had valid contact information for Plaintiff.

23. Plaintiff's family members informed ACE that they did not wish to be contacted regarding the Debt, but ACE continued to contact them; Plaintiff's Mother and Father and her brother and sister-in-law received multiple calls from ACE.

24. Prior to receiving calls from ACE, Plaintiff's family members were not aware that she was experiencing financial difficulty or that she had an account that had been referred to a collection agency.

25. As a result of ACE's contacts to her family members, Plaintiff experienced embarrassment, shame, distress, and humiliation.

26. On or around April 11, 2012, ACE began contacting Plaintiff's place of employment in an attempt to collect the Debt.  That day, ACE called Plaintiff's place of employment at 9:49 AM and again at 9:55 AM from telephone number 615-310-7911. The message left directed Plaintiff to return the call to telephone number 1-800-280-3800.

27. That same day, on or around April 11, 2012, Plaintiff returned ACE's call and spoke with representatives who identified themselves as Richard Adams ("Adams") and Shelly Brabham ("Brabham").

28. Brabham told Plaintiff that Plaintiff's account had been referred to her department because Plaintiff had refused to pay the Debt.

29. Plaintiff advised Brabham that she had not refused to pay the Debt, but that she had merely requested verification of the Debt because she did not even know the amount that ACE was requesting.

30. Brabham forwarded Plaintiff's call to Adams, to whom Plaintiff reiterated her request for verification of the Debt.

31. Adams told Plaintiff that he could email or fax something to her, but Plaintiff requested that he send the letter by mail.

32. Adams became argumentative and insisted that Plaintiff accept verification by email or fax.  Eventually, after several minutes of arguing, Adams agreed to provide Plaintiff with verification by regular mail.

33. Plaintiff also informed Adams that she could not receive personal calls at work and requested that ACE stop contacting her at her place of employment.

34. Despite Plaintiff's requests, ACE continued to contact her at her place of employment, calling her on April 17, 2012, April 18, 2012, April 19, 2012, and April 20, 2012.

35. On or around April 17, 2012, in response to her request for verification of the Debt, Plaintiff received a letter from ACE dated April 13, 2012 ("the Letter").  That Letter did not advise Plaintiff of the name and address of the original creditor, did not advise Plaintiff of her right to dispute the debt within 30 days of receipt, and did not state the original balance of the Debt.

36. Further, the Letter purported to reference an agreement between Plaintiff and ACE, although Plaintiff had not discussed or reached any agreement to pay ACE. Further, although the Letter was dated April 13, 2012, it provided that if Plaintiff did not pay by February 27, 2012, the purported agreement would be null and void.

37. On or around April 20, 2012, an ACE representative contacted Plaintiff at her place of employment.  Plaintiff advised him that she could not receive personal calls at work and requested that he stop contacting her at her place of employment.

38. To this, the ACE representative began to yell at Plaintiff. The representative yelled so loud into the phone that Plaintiff's coworker could hear him.

39. As a result of the aforementioned actions of ACE, Plaintiff suffered further humiliation, embarrassment, mental anguish and distress.

40. As a result of the humiliation, embarrassment, mental anguish and distress, Plaintiff was reduced to tears on several occasions and Plaintiff and her husband were forced to unplug their home phone to avoid further abuse and distress. Plaintiff also suffered a loss of sleep and was unable to focus at her job as a result of the numerous collection calls she received there.

41. ACE's actions were willful, wanton and malicious, in that they intended to cause Plaintiff distress to induce Plaintiff to pay the debt, in hopes that Plaintiff would pay in order to relieve the stress.

42. ACE has violated the FDCPA and CUTPA and is liable for intentional infliction of emotional distress.

43. Plaintiff has suffered actual damages and an ascertainable loss because of the repeated phone calls and improper collection activity in the form of postage and phone, and facsimile expenses associated with communicating with her attorney who had to sent written notice to ACE to cease and desist its collection activities.

WHEREFORE, Plaintiff prays for the following relief:

Monetary damages related to Plaintiff's emotional distress; Actual damages, statutory damages, and attorney's fees and costs pursuant to 15 U.S.C. § 1692k, actual damages, punitive damages, and attorney's fees pursuant to Conn. Gen. Stat. § 42-110g, and such other relief as this Court deems appropriate.

                              PLAINTIFF, AMANDA CHASE

                By: __/s/ Daniel S. Blinn_____
                    Daniel S. Blinn, ct02188
                    dblinn@consumerlawgroup.com
                    Consumer Law Group, LLC
                    35 Cold Spring Rd. Suite 512
                    Rocky Hill, CT  06067
                    Tel. (860) 571-0408; Fax. (860) 571-7457